FERNANDO SIERRA BERDECIA, COMMISSIONER OF LABOR OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* ANDRÉS SAN MIGUEL, Defendant and Appellee. .

No. 10059. Argued November 25, 1949.—Decided November 29, 1949.

574

Ramón Cancio and *Augusto Palmer, Counsel for the Department of Labor,* for appellant. *Angel Rivera Colón* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This is a suit filed by the Commissioner of Labor in the district court on behalf of a number of workmen against Andrés San Miguel for unpaid wages totalling $470.28. The Commissioner has appealed from a judgment in favor of the defendant.

In February, 1946 the defendant entered into a contract with the Government of Puerto Rico, War Emergency Program, pursuant to which he was to build five one-room schools. The contract provided that "The minimum wage paid to workmen will be twenty cents per hour. For semi-skilled workers the minimum will be twenty-seven cents and thirty-five cents° for skilled workers." The contract also contained provisions that "The Contractor will comply and will make his employees comply with the labor laws in effect", and that "The Engineer will assure compliance with these laws, especially those relating to hours of work, minimum wage and accident insurance."

The defendant was engaged in the construction of these schools from February, 1946 to August 3, 1946. It is conceded that he paid his workmen the minimum wages provided in the contract. However, Mandatory Decree No. 11 of the Minimum Wage Board of Puerto Rico went into effect on July 1, 1946. And the minimum wages provided therein for the workmen involved in this complaint were higher than those contained in the contract. The plaintiff therefore seeks to recover for the period from July 1 to August 3, 1946 the differences between the wages the workmen received under the contract and the wages provided in the decree.

There is no dispute between the parties as to the facts. The only controversy is whether the minimum wages for the period from July 1 to August 3, 1946 were controlled by the contract or by the decree. In deciding this issue for the defendant, the district court, after citing §§ 1206, 1208, 1210, 1233 and 1235 of the Civil Code, said the following:

"In order to sustain the contention of the plaintiff in this case, we would have to conclude that Mandatory Decree No. 11, approved July 1, 1946, had a retroactive effect and affected the contract executed by the parties on February 8, 1946; in other words, that the decree affected the sanctity of the contract executed by the defendant with the Government of Puerto Rico, but such an interpretation goes against the very purpose and intention of the said decree, as the latter provides in clause No. 8 that it will go into effect on July 1, 1946, having been approved May 31, 1946, that is, the said decree is to be applied prospectively.

"We understand that the position of the defendant is correct and the government having contracted, prior to the approval and the effectiveness of Mandatory Decree No. 11, as to the price or wage the defendant must pay his workmen, the former is not compelled to pay the minimum wages fixed by the said decree."

We find it unnecessary to examine the contentions of the Commissioner (1) that the Government did not contract

with the defendant as to the wages he was to pay his workmen, since the contract provided only for certain minimum wages and did not establish fixed wages; and (2) that there is no conflict between the contract and the decree. We assume that there was a fixed wage provided in a contract which was binding on the workmen and that the decree was in conflict with this contract. Even under these circumstances the lower court erred in entering judgment for the defendant.

The Organic Act and the Constitution are not self-defeating. The fact that § 2 of the Organic Act, Title 48 USC § 737, prohibits the impairment of the obligation of contracts does not mean that individuals may by contract immobilize indefinitely the exercise by the state of its police power. If this were true, a lessee of a house of prostitution or a saloon could successfully invoke the contract clause against subsequent legislation outlawing such activities. And a vendor could enter into contract fixing prices of commodities and then ignore future valid price-fixing statutes. See *Mercado* v. *Brannan*, 173 F(2) 554 (CCA 1, 1949). By the same token, it can scarcely be contended that substandard wages and hours are beyond correction by the state because employers have attempted to insulate themselves against such legislation by contracts between employers and workmen fixing wages and hours of work. Such contracts must yield to the valid exercise of the police power by the state. Otherwise the police power will have been emasculated before the state has ever attempted to exercise it.

Private contracts of employment, whether for short or long terms, are subject and subordinate to the police power. Consequently, the state need not wait for contracts providing for substandard wages to expire. It may validly provide that minimum wage acts shall go into effect immediately. Under such legislation existing contracts of employment are necessarily superseded by operation of law

insofar as they are in conflict with minimum wage legislation which is otherwise valid under the police power. No rule is more firmly embedded in our constitutional law than this doctrine. *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379; *United States* v. *Darby*, 312 U. S. 100, 125; *Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398, 434–38, and cases cited; Rottschaefer on Constitutional Law, pp. 570–2, 596; *Luce & Co.* v. *Minimum Wage Board*, 62 P.R.R. 431; *American R. R. Co.* v. *Minimum Wage Board*, 68 P.R.R. 736; *Irizarry* v. *Rivera Martínez, Com'r.*, 56 P.R.R. 495.

Moreover, Congress, out of an abundance of caution, specifically provided for this situation. After providing in § 2 of the Organic Act against impairment of the obligation of contracts, it enacted paragraph 10 of § 2, reading as follows: "Nothing contained in this chapter shall be construed to limit the power of the legislature to enact laws for the protection of the lives, health, or safety of employees." This, without more, makes valid the application of a minimum wage decree despite the existence of a conflicting contract.

It is important to note that Mandatory Decree No. 11 is directed to all employers in the construction industry and not solely to employers engaged in public works. If the latter were the case, we might have a different question. But since this was a general decree applying to all contractors, whether engaged in private or public works, it was undoubtedly a valid exercise of police power as applied to work performed on the project herein after the effective date of the decree.

Our language in *Luce & Co.* v. *Minimum Wage Board, supra*, pp. 448–50, involved a wholly different question. There we indicated that if legislation providing for a retroactive increase in pay was enacted after a contract of employment had been executed, it would violate the due process clause. But there was no attempt here to apply the decree to past work; it was applied only to work done after its effective date.

The judgment of the district court will be reversed and a new judgment will be entered requiring the defendant to pay the workmen the amounts listed in the complaint, aggregating $470.28, plus "an amount equal to the unpaid amount, as an additional penalty", as provided in § 25 of Act No. 8, Laws of Puerto Rico, 1941, as amended by Act No. 451, Laws of Puerto Rico, 1947.